## WILLIAM H. CLEAVELAND *vs.* JOSIAH W. FLAGG.

Where land is conveyed "beginning at" and "bounding on land of B.," the point of beginning and boundary is the true line of B.'s land, and not the line of B.'s occupation as shown by a fence set up and maintained by B. before and after the conveyance, with the consent of the owner of the lot conveyed, under the mistaken belief that such was the true line.

Land being conveyed and described as bounding on the land of an adjoining owner, of a part of which the grantor was in fact disseized, such adjoining owner being then in the occupation of that part, under a mistaken belief of both that the line of occupation was the true line, the grantee entered and removed the fence from the supposed to the true line, and remained in possession accordingly: it was held, that the grantee, by way of rebutter and to avoid circuity of action, might avail himself of his title in defence to a writ of entry brought by the adjoining owner.

THIS was a writ of entry, to recover a lot of land in Springfield, tried in this court before *Dewey*, J., and by him reported for the opinion of the whole court, in substance as follows : —

Both parties claimed through several mesne conveyances under Linus Hubbard, who, prior to November 1st, 1830, owned a large tract of land, embracing the lot in controversy. The demandant derived his title through the following conveyances. Linus Hubbard, by deed dated February 18th, 1834, conveyed to Cyrus Buckland a certain parcel of land in said Springfield, described as follows, viz.: " Beginning on Pine street at the north-east corner of land conveyed by me to Eunice Stephenson, thence northerly on Pine street fifty-nine feet, thence westerly to the north-east corner of the said Buckland's house lot, thence south by said Buckland's land to the said lot conveyed by me to the said Eunice Stephenson, thence easterly to the first-mentioned bounds." Cyrus Buckland, by deed dated August 30th, 1841, conveyed to the demandant " a certain tract or parcel of land, bounded west on Walnut street, north on land occupied by Linus Hubbard and a lot of Draper and Bailey, east on Pine street, and south on lands of Bradley and Elisha D. Stocking, containing about half an acre, more or less, with the buildings thereon, as now occupied by me."

The deed from Linus Hubbard to Eunice Stephenson, referred to in the deed from Hubbard to Buckland, bears date November 1st, 1830, and describes the premises thereby conveyed, being the lot next south of the demandant's land, as " beginning at the north-east corner of Daniel Field's house lot, on the west side of Pine street, thence running northerly on said Pine street one hundred feet to a stake and stones, thence westwardly by land belonging to the grantor to land of Elisha D. Stocking or Dudley Brown, thence southerly on land of said Stocking or Brown or both one hundred and thirty-five feet to the north line of said Field's land, thence easterly on said Field's land to the first-mentioned bounds." The north-east corner of Field's lot was a well-known and established bound.

7\*

The tenant claimed title as follows : Linus Hubbard conveyed to William W. Bowles by deed dated July 1st, 1836 a lot of land " beginning at the south-east corner, at land of Cyrus Buckland, thence north on Pine street five rods and twelve feet to a stake and stones, thence westerly on my own land five rods and ten feet to a stake and stones, thence southerly on my own land four rods to land of said Buckland, thence easterly on land of said Buckland five rods and five feet to the place of beginning." Bowles, by deed of June 7th, 1838, conveyed to Draper and Bailey ; and Bailey, on the 24th of September, 1847, made a quitclaim deed to the tenant.

The following facts appeared in evidence. At or soon after the time of Hubbard's conveyance to Buckland, Hubbard and Buckland together measured Buckland's line on Pine street, beginning at a point which Hubbard said was the corner of the Stephenson lot, and measuring thence northerly on Pine street fifty-nine feet; and very soon afterwards a post and rail fence was erected by Hubbard and Buckland according to this measurement between Buckland's lot and Hubbard's lot on the north, and between Buckland's lot and that of William Bradley (who had married Eunice Stephenson) on the south. Buckland occupied to these fences, until he sold to Cleaveland the premises in dispute, making part of his garden. The demandant, soon after his purchase from Buckland, under an arrangement with Bailey, removed the fence between their lots, and occupied a part of Bailey's lot adjoining his own northerly line ; and when this arrangement was at an end, in October, 1846, built a new picket fence substantially on the line of the one which he had removed. The end of this fence on Pine street was one hundred and sixty-two feet and ten inches northerly of the Field corner ; and in the fall of 1847, was removed by the tenant southerly upon the demandant's land.

In 1838 or 1839, Bradley built a picket fence in front of his lot on the line of Pine street, which he directed to have made one hundred feet long, but through a mistake of the workmen, in measuring, it was extended one hundred and

four feet northerly from Field's corner. The demandant. after his purchase of Buckland, notified Bradley that the fence between their lots was four feet too far north on Pine street, and it being found on measurement to be one hundred and four feet north of the Field corner, he, with Bradley's consent, cut off four feet of the northerly end of the picket fence on Bradley's front line, and removed the fence between their lots four feet southwardly, and had ever since occupied to that fence, as so removed.

Upon these facts, the court ruled, that the description in the deed from Bailey to Flagg of a boundary line on Cleaveland's land, was to a line to which Cleaveland owned, and not land of which Cleaveland was in possession merely; the line of ownership, and not of occupation, governing, where ownership of adjoining land was shown to exist. Upon the question whether the tenant could set up in defence the various deeds relied upon, and show that Bailey, his grantor, had a right to the estate demanded, notwithstanding the tenant received his deed at a time when the demandant was in adverse possession of the premises, the court ruled, that assuming the general doctrine to be, that the tenant could not by the deed from Bailey obtain a valid title in his own right, sufficient to support a writ of entry, yet that if the demandant admitted himself to be disseized, and the tenant had actually entered under his deed and acquired possession, he could not, in an action brought by himself to regain possession, avail himself of this objection, so far as to prevent the tenant from setting up the legal title as having existed in Hubbard, and by him transmitted through Bailey to the tenant, in reference to the demandant's right to recover the land.

The jury were further instructed, that the location of a fence between the lands of the respective parties could not control or give a construction to a deed, where the language of the deed on the face of it was clear and obvious, especially if the jury believed that the fence was so located by the parties under a mistake, and that no title had been acquired by adverse possession; but that in cases of doubtful words

in a deed, or where the description of the premises was uncertain on the face of it, the acts of the parties, and their practical construction, might be shown, and were evidence to be considered by the jury in giving a construction to the deed.

The jury returned a verdict for the tenant. If the rulings and instructions above stated were not sufficiently favorable to the demandant, a new trial is to be ordered; otherwise, judgment is to be rendered upon the verdict.

*R. A. Chapman,* for the demandant, cited *Boston & Worcester Railroad Corp.* v. *Sparhawk,* 5 Met. 469 ; *Everenden* v. *Beaumont,* 7 Mass. 76 ; *Swett* v. *Poor,* 11 Mass. 549 ; *Brinley* v. *Whiting,* 5 Pick. 368 ; *Lane* v. *Shears,* 1 Wend. 433 ; *Stone* v. *Clark,* 1 Met. 378 ; *Crosby* v. *Parker,* 4 Mass. 110.

*H. Morris,* for the tenant, cited *Crosby* v. *Parker,* 4 Mass. 110 ; *Cornell* v. *Jackson,* 9 Met. 150 ; *Wade* v. *Lindsey,* 6 Met. 407 ; *Sparhawk* v. *Bullard,* 1 Met. 95, 103.

SHAW, C. J. The demandant contends, that, independently of any question of possession or disseizin, the deed from Hubbard to Bowles, of July 1st, 1836, under which the tenant claims, did not by its description purport to carry his south line, to which the demandant removed his fence and now claims, so as to include the triangular strip now in controversy. This question depends upon the construction of that deed and its descriptive terms.

It appears that about two years before, namely, on the 18th of February, 1834, Hubbard had conveyed to Buckland a lot on Pine street, the boundary of which could be exactly determined by admeasurement from Field's corner, which was a well-known fixed point, on Pine street. But in consequence of some mistake in the admeasurement, the point supposed and understood both by the grantor and the grantee to be the northerly bound of the land thus granted, was fixed between four and five feet too far north, and a fence had been erected, by the mutual consent of Hubbard and Buckland, on the line thus erroneously fixed, at its easterly end, on Pine street.

Cleaveland *v.* Flagg.

Such was the state of Buckland's title under Hubbard and such the position of the fence, when the deed in question was made, from Hubbard to Bowles, July 1st, 1836, in which the estate is described as follows: " Beginning at the south-east corner, at land of Cyrus Buckland, thence north on Pine street five rods twelve feet to a stake; thence westerly on my own land five rods ten feet to a stake; thence south on my own land four rods, to land of said Buckland, five rods and five feet to the place of beginning." The question is, whether the south-east corner at land of Buckland shall be construed to be the true line of Buckland's land, or the fence which was set up by consent of both Buckland and Hubbard, under a belief, that it was the true line, and which was in fact the line of Buckland's occupation; and the court are of opinion, that it was the true line of Buckland's land, and not the line of his occupation, as indicated by a fence placed there by mistake, which was intended. The fence had not stood long enough, if it amounted to a disseizin, to give Buckland any title or claim of right by possession; and the true line was capable of being precisely ascertained, by admeasurement from Field's corner. *Crosby* v. *Parker*, 4 Mass. 110; *Cornell* v. *Jackson*, 9 Met. 150.

When a monument is mentioned in a deed, and there is no such monument on the ground, and the parties by consent, at the time or soon after, erect and place a monument, intending it as and for the monument described, it will be so deemed afterwards, as if it had been standing at the time. *Makepeace* v. *Bancroft*, 12 Mass. 469; *Blaney* v. *Rice*, 20 Pick. 62. But that rule does not apply to the present case. Here no fence was alluded to in the deed, as a monument. The fence was not set up with a view to make it a monument, and there was no uncertainty respecting the true line. It appears quite certain, then, that Hubbard owned up to Buckland's true line, notwithstanding the fence; and if he did, we think it is beyond doubt that he intended to convey it; indeed, such is the direct effect of the words of his deed to Bowles.

Another point, relied upon by the demandant, was, that the tenant's predecessor, Bowles, took his deed from Hubbard, when Hubbard was himself disseized; that nothing passed by the deed; that the defendant took no title under Bowles's deed; and that he could not defend in this action. But, although Hubbard was disseized, when he conveyed to Bowles, and perhaps Bowles did not thereby become seized, it would not necessarily follow that Bowles would be wholly a stranger to the title. If he had no right of entry, yet he might have brought an action in the name of his grantor, and, upon recovery, held the land to his own use. But he did in fact enter, and remove the fence, and placed it on the true line, and remained in possession. Now, the demandant brings an action, which puts the title directly in issue; and, by way of rebutter, and to avoid circuity of action, the court are of opinion, upon the authorities, that the tenant may avail himself of his title, in defence to the present action. *Wade* v. *Lindsey*, 6 Met. 407.

*Judgment on the verdict for the tenant.*